UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANIEL G. FRAZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02619-JMS-DLP |
| | ) | |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration,[1] | ) ) ) | |
| Defendant. | ) | |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Daniel Frazier applied for disability insurance benefits ("DIB") and/or supplemental security income ("SSI") from the Social Security Administration ("SSA") on July 8, 2013, alleging an onset date of June 16, 2008. [Filing No. 18-2 at 38.] His applications were initially denied on November 6, 2013, [Filing No. 18-5 at 2; Filing No. 18-5 at 6], and upon reconsideration on March 13, 2014, [Filing No. 18-5 at 14; Filing No. 18-5 at 18]. Administrative Law Judge Ronald T. Jordan (the "ALJ") held a hearing on November 12, 2015, [Filing No. 18-3 at 23-44], and held a supplemental hearing on April 14, 2016, [Filing No. 19-2 at 4-26]. The ALJ issued a decision on June 17, 2016, concluding that Mr. Frazier was not entitled to receive DIB or SSI. [Filing No. 18-2 at 35.] The Appeals Council denied review on June 13, 2017. [Filing No.

---

[1] It has come to the Court's attention that on March 6, 2018, the General Counsel of the U.S. Government Accountability Office (GAO) notified the President that effective November 17, 2017, Nancy A. Berryhill could no longer serve as the "Acting Commissioner" of the Social Security Administration pursuant to the Federal Vacancies Reform Act of 1998, Pub.L.No. 105-277, Div. C, Title I, 112 Stat. 2681-611 (Oct. 21, 1998), as amended, 5 U.S.C. §§ 3345-3349d. GAO, https://www.gao.gov/products/D18772#mt=e-report (last visited Apr. 27, 2018). The case caption has been updated to reflect Ms. Berryhill's current official title.

1

18-2 at 2.] On August 4, 2017, Mr. Frazier timely filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Deputy Commissioner]; (4) whether the claimant can

perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[2] "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Deputy Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, the citations in this opinion refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

3

award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Mr. Frazier was 36 years of age at the time he applied for DIB and/or SSI. [Filing No. 18-7 at 2.] He has a limited education and previously worked as a forklift operator and a warehouse worker. [Filing No. 18-2 at 48.][3]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Mr. Frazier was not disabled. [Filing No. 18-2 at 49-50.] The ALJ found as follows:

- At Step One, Mr. Frazier had not engaged in substantial gainful activity[4] since June 16, 2008, the alleged onset date. [Filing No. 18-2 at 40.]

- At Step Two, Mr. Frazier had the following severe impairments: cervical spine degenerative disc disease, left shoulder impingement syndrome (status-post arthroscopic surgery), chronic obstructive pulmonary disease "with continued smoking," personality disorder, anxiety, and depression. [Filing No. 18-2 at 41.]

- At Step Three, Mr. Frazier did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 18-2 at 42.]

- After Step Three but before Step Four, Mr. Frazier had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently. He can stand and walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. He can occasionally stoop, balance, crouch, kneel, crawl and climb ramps or stairs. He cannot perform overhead work and can frequently reach bilaterally. He is limited to work involving simple, repetitive tasks requiring minimal independent judgment

---

[3] The discussion of Mr. Frazier's medical history and treatment includes sensitive and otherwise confidential medical information. To the extent possible, the Court will detail here specific facts only as necessary to address the parties' arguments.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

regarding primary work processes; and he should have only occasional, superficial contact with coworkers, supervisors, and the general public." [Filing No. 18-2 at 43.]

- At Step Four, relying on the testimony of the vocational expert ("VE") considering Mr. Frazier's RFC, Mr. Frazier was incapable of performing any of his past relevant work. [Filing No. 18-2 at 48.]

- At Step Five, relying on VE testimony considering Mr. Frazier's age, education, and RFC, there were jobs that existed in significant numbers in the national economy that Mr. Frazier could have performed through the date of the decision. [Filing No. 18-2 at 49.]

## III.
### DISCUSSION

Mr. Frazier makes two assertions of error regarding the ALJ's decision, each of which the Court will consider in turn.

### A. Whether the ALJ Properly Evaluated Mr. Frazier's Subjective Symptoms

Despite citing multiple reasons the ALJ provided, Mr. Frazier argues generally that Social Security Ruling ("SSR") 16-3p does not allow the ALJ to disregard an individual's statements solely because the objective evidence does not substantiate the degree of impairment-related symptoms alleged by an individual and that the "only reason provided by the ALJ for rejecting [Mr.] Frazier's credibility is legally insufficient and not supported by substantial evidence." [Filing No. 20 at 27-28.] Mr. Frazier also argues that the ALJ failed to consider that his activities of daily living were considerably less strenuous than the ALJ suggested and that the ALJ equated their performance with meeting the demands of full-time competitive work. [Filing No. 20 at 28-29.] Mr. Frazier further argues that the ALJ did not consider the medications that he has been prescribed or their side effects. [Filing No. 20 at 30.]

The Deputy Commissioner argues that that ALJ reasonably assessed Mr. Frazier's subjective symptoms, providing several valid reasons to support his adverse finding, such that it

was not patently wrong. [Filing No. 28 at 3.][5] In relevant part, the Deputy Commissioner argues that the ALJ discussed that mental status examinations were generally unremarkable beyond showing a dysphoric mood, but that the ALJ did not rely solely on the objective medical evidence in assessing Mr. Frazier's subjective symptoms. [Filing No. 28 at 4.] The Deputy Commissioner further argues that the ALJ's adverse finding was supported by a discussion of the evidence showing that Mr. Frazier's mental health symptoms improved with regular treatment and prescribed medication, but Mr. Frazier was not always compliant with either. [Filing No. 28 at 5-6.]

In his reply, Mr. Frazier asserts generally that the Deputy Commissioner is forbidden by the *Chenery* Doctrine from defending the ALJ's decision with post hoc rationalizations, but Mr. Frazier does not identify for the Court what, if any, argument advanced here by the Deputy Commissioner was not reflected in the ALJ's decision. [Filing No. 29.]

An ALJ's credibility determination will not be overturned unless "patently wrong." *Herron v. Shalala,* 19 F.3d 329, 335 (7th Cir. 1995); *see also Elder v. Astrue,* 529 F.3d 408, 413–14 (7th Cir. 2008) ("It is only when the ALJ's determination lacks any explanation or support that we will declare it 'patently wrong.'"); *Prochaska,* 454 F.3d at 738 ("Only if the trier of facts grounds his credibility finding in an observation or argument that is unreasonable or unsupported can the finding be reversed."). Furthermore, an ALJ must provide an "accurate and logical bridge

---

[5] Both parties to a varying degree conflate their arguments as to Mr. Frazier's alleged subjective symptoms pertaining to both his mental and physical impairments, as well as the reasons supplied by the ALJ for discrediting those distinct complaints. [*See* Filing No. 20; Filing No. 28.] At the initial hearing, Mr. Frazier's representative declined to even develop additional evidence related to Mr. Frazier's back pain, noting, "I think his problems are mental," and the ALJ agreed "it's the main issue in the case, yes." [Filing No. 18-3 at 42.] At the supplemental hearing, the ALJ called only one medical expert, a clinical psychologist, to provide testimony about the record. [Filing No. 18-20 at 64.] Accordingly, for the sake of clarity, the Court will review the ALJ's decision focusing as the parties did on Mr. Frazier's complaints related to his mental health impairments.

from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Along with that duty, the ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

On March 28, 2016, SSR 16-3p became effective, replacing SSR 96-7p, and provided new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated. SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304 at *2. Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing his "credibility." *Id.* The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of [certain] *assertions* by applicants, [including pain], especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). With regard to the evaluation of subjective symptoms, the ruling describes longstanding policy that:

> Once the existence of a medically determinable impairment that could reasonably be expected to produce pain or other symptoms is established, we recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence. In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

7

SSR 16-3p, 2017 WL 5180304 at *4; *see Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) ("And so 'once the claimant produces medical evidence of an underlying impairment, the [Deputy] Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.'") (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)). "A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2017 WL 5180304 at *5.

The ALJ identified that Mr. Frazier's subjective complaints related to his mental health impairments included a tendency to isolate himself in his bedroom and an inability to tolerate being in public. [Filing No. 18-2 at 44-45.] Additionally, Mr. Frazier testified to suicidal ideation (with no history of attempts), insomnia, and an inability to handle noise causing him to get angry and break down crying. [Filing No. 13-3 at 10.] However, the ALJ found that Mr. Frazier's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision." [Filing No. 18-2 at 45.]

The ALJ did note the absence of supportive objective signs, observing that the mental status examinations in Mr. Frazier's treatment notes were "generally unremarkable," other than "showing a dysphoric mood." [Filing No. 18-2 at 46.] Furthermore, the ALJ noted that both of the consultative examinations of record similarly indicated the ability to interact normally, express basic and more complex ideas, [Filing No. 18-2 at 46 (citing Filing No. 18-14 at 11)], establish basic rapport, attend to simple tasks, respond appropriately, and learn, remember, and comprehend instructions presented in the interview, [Filing No. 18-2 at 46 (citing Filing No. 18-20 at 52)].

8

However, the ALJ also supplied other reasons for discounting the alleged severity of Mr. Frazier's subjective symptoms.

In relevant part, the ALJ found that the "medical evidence does not support the alleged severity of claimant's symptoms and, significantly, the claimant demonstrated considerable improvement in his mental health symptoms with regular treatment and medication compliance." [Filing No. 18-2 at 46 (citing Filing No. 18-16 at 29 (On May 21, 2014, increased Cymbalta dose was reported as "very helpful" with Mr. Frazier no longer "getting angry or pulling [his] hair out" and "wife is impressed [with] improvement."); Filing No. 18-16 at 35 (Mr. Frazier "has experienced significant improvement in his anxiety the past few months. While it is still a struggle, and he has times that are more severe, he no longer exhibits obvious psychomotor agitation and has been able to apply some of the coping strategies we have discussed . . ."); Filing No. 18-16 at 43 ("On August 13, 2014, Mr. Frazier "had shown dramatic improvement and was finally using [progressive muscle relaxation] techniques and felt [Cymbalta] effective," but Mr. Frazier "says he's backslid since wife's [grandmother] moved in," so "he avoids her by staying in [his] room."))]

The ALJ then observed that "despite this improvement, the record shows many missed appointments, erratic participation, and failure to follow through on treatment recommendations or maintain medication compliance." [Filing No. 18-2 at 46 (citing Filing No. 18-20 at 12 (On August 11, 2015, Mr. Frazier noted to have "chronic anxiety, depression and very poor compliance, erratic therapy engagement, came in yesterday after [a three month] absence and says he's committing to active therapy though historically doesn't follow through [with treatment, medication] compliance has been poor, often forgets to take, [had a] tough week" due to recent situational stressors and he reports that he "spends most days 'cooped up in [his] bedroom.'");

9

Filing No. 18-20 at 15 (On June 10, 2015, Mr. Frazier "failed third [appointment] in a year" and "has missed many therapy [appointments] as well.")).] The Deputy Commissioner's point is well taken that SSR 16-3p instructs the ALJ that:

> In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.

SSR 16-3p, 2017 WL 5180304 at *9. Indications of Mr. Frazier's positive response to treatment coupled with his failure to maintain compliance with that recommended treatment were valid considerations. Indeed Mr. Frazier does not effectively dispute them.

Moreover, the ALJ relied on the opinions of expert consultants. The ALJ gave great weight to the opinion of James Brooks, Ph.D., a clinical psychologist who testified as a medical expert at the supplemental hearing, based on his specialty and the fact he was able to review all the medical evidence at the time of the hearing and Mr. Frazier's testimony. [Filing No. 18-2 at 46]; 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty that to the medical opinion of a source who is not a specialist."). An opinion can be conclusive, particularly when it is based on the entire medical record or the entirety of the relevant medical record. *Waite v. Bowen*, 819 F.2d 1356, 1360 (7th Cir. 1987). Dr. Brooks assessed specific functional limitations, which the ALJ expanded upon, adding further restrictions to Mr. Frazier's RFC due to his subjective symptoms. [Filing No. 18-2 at 46.] Dr. Brooks's testimony referenced the history of noncompliance that the ALJ relied upon. [Filing No. 19-2 at 20-21.] Dr. Brooks also specifically testified that his assessment was based on the two consultative evaluations finding Mr. Frazier's subjective symptoms not "fully credible."

[Filing No. 19-2 at 21]; 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as whole, the more weight we will give to that medical opinion.").

Furthermore, the ALJ gave great weight to the opinion of the consultative examiner, Paul Lysaker, Ph.D. [Filing No. 18-2 at 46.] After an examination on December 19, 2015, Dr. Lysaker provided a medical source statement assessing only mild limitations with Mr. Frazier's ability to do work-related tasks. [Filing No. 18-20 at 45-47.] SSR 16-3p makes clear that the expert consultant evidence is another valid consideration:

> Medical evidence from medical sources that have not treated or examined the individual is also important in the adjudicator's evaluation of an individual's statements about pain or other symptoms. For example, State agency medical and psychological consultants and other program physicians and psychologists may offer findings about the existence and severity of an individual's symptoms. We will consider these findings in evaluating the intensity, persistence, and limiting effects of the individual's symptoms. Adjudicators at the hearing level or at the Appeals Council level must consider the findings from these medical sources even though they are not bound by them.

SSR 16-3p, 2017 WL 5180304 at *7. Mr. Frazier does not specifically challenge the ALJ's weighing of the opinion evidence.

Mr. Frazier does accurately point out that the ALJ did not confront evidence of record revealing that Mr. Frazier complained of side effects with the use of prescribed medication. [Filing No. 20 at 30.] For example, while noting improvement with Cymbalta, Mr. Frazier "also mentioned sedation has increased along with the increased dosage and Mr. Frazier 'doesn't want to go off' the medication, so the provider suggested dividing the dosage between specific times of the day." [Filing No. 18-16 at 29.] Later, it was noted that "[h]e doesn't believe that the Cymbalta is helping anymore." [Filing No. 18-20 at 2.] "An individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms." SSR 16-3p, 2017 WL 5180304 at *10. However, the Court does not find this omission alone to rise to the level of patent

11

error, where the ALJ's subjective symptom evaluation rested on other valid considerations. *See McKinzey v. Astrue*, 641 F.3d 884, 890-91 (7th Cir. 2011) (finding subjective symptom evaluation supported by substantial evidence despite finding some merit in the challenges to two of three reasons given by the ALJ).

While both parties make arguments concerning the ALJ's use of activities of daily living, the Court does not read the ALJ's evaluation of Mr. Frazier's subjective mental health symptoms to involve any actual analysis under that regulatory factor, supportive or otherwise. [*See* Filing No. 20 at 28-30; Filing No. 28 at 6-7.] The ALJ briefly discusses activities of daily living in the Step Three analysis as is required, finding support for moderate limitations in that domain. [*See* Filing No. 18-2 at 42.] However, the only mention of any activity in the subjective symptom evaluation involves a physical complaint concerning Mr. Frazier's shoulder impairment, which the ALJ found was undermined by references in the record to Mr. Frazier being "capable of chopping firewood" shortly after the injury. [Filing No. 18-2 at 45.] To whatever limited extent activities of daily living were used to undermine Mr. Frazier's claim, the Court does not find patent error.

The ALJ further referenced other valid considerations in evaluating Mr. Frazier's subjective symptoms related to his physical impairments. For example, the ALJ found notable a lack of treatment for leg pain and normal objective signs related to his gait. [Filing No. 18-2 at 45.] The ALJ referenced continued smoking and indications that Mr. Frazier did not need to use his inhaler or nebulizer in evaluations of his breathing complaints. [Filing No. 18-2 at 45.] The ALJ further referenced that Mr. Frazier's shoulder injury responded well to arthroscopic surgery. [Filing No. 18-2 at 45.] Accordingly, for all the reasons above, the Court does not find that the ALJ's subjective symptom evaluation was patently wrong, where the ALJ cited to relevant and substantial evidence to reach his conclusions.

### B. Whether the ALJ Properly Considered Mr. Frazier's Individualized Response to Stress

Mr. Frazier argues that the ALJ did not address his ability to handle stress in the workplace "in the assigned RFC, nor anywhere in the decision." [Filing No. 20 at 32.] Mr. Frazier asserts generally that the ALJ failed to follow SSR 85-15. [Filing No. 20 at 32-33.] Mr. Frazier contends that the ALJ failed to properly account for his reported difficulties handling stress and changes in routine. [Filing No. 20 at 34.] Furthermore, Mr. Frazier argues that the ALJ's RFC finding does not adequately provide for the limitations from his combined depression and anxiety. [Filing No. 20 at 34-35.]

The Deputy Commissioner argues that the ALJ reasonably assessed the objective medical and opinion evidence in assessing Mr. Frazier's mental limitations. [Filing No. 28 at 8.] The Deputy Commissioner further argues that the ALJ was only required to incorporate the limitations that he found supported by the record and that Mr. Frazier does not point to anything in the record, including opinion evidence that suggests he is unable to cope with work-related stress. [Filing No. 28 at 10-11.]

While Mr. Frazier conclusively asserts that the ALJ failed to follow SSR 85-15 and consider his individualized response to stress based on his particular mental health impairments, Mr. Frazier makes no attempt to explain for the Court how the record demonstrates situational triggers or persistent symptoms that were not considered by the ALJ in formulating Mr. Frazier's RFC. [*See* Filing No. 20 at 32-36.] While SSR 85-15 cautions that reactions to the demands of work (or stress) are highly individualized, whereby a particular individual may find performance of so called low-stress or unskilled work to be as objectively difficult as more complex or stressful work based on their particular mental impairments, SSR 85-15 (S.S.A. 1985), 1985 WL 56857 at

13

*5-6, the context of the ruling is that "[i]n the world of work, losses of intellectual and emotional capacities are generally more serious when the job is complex," *Id*. at *4. Additionally, the ruling makes clear that "[t]his section is not intended to set out any presumptive limitations for disorders, but to emphasize the importance of thoroughness in evaluation on an individualized basis," *Id*. at *5. Asserting the ruling was not followed without articulation of how this case is different than the ordinary circumstance is not availing.

The ALJ's RFC limits Mr. Frazier's exposure to stressful situations by reducing the complexity of the job, the judgment required, and interaction with others. [Filing No. 18-2 at 43.] Most notably, the ALJ gave great weight to a consultative examiner that opined that Mr. Frazier has the functional ability to meet the basic demands of unskilled work. [Filing No. 18-2 at 46 (citing Filing No. 18-20 at 45-53)]; *see* SSR 85-15, 1985 WL 56857 at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.").

Mr. Frazier does not present any evidence supportive of his argument, except his own reported subjective symptoms. However, as discussed above at length, the ALJ, within the scope of discretion, discounted the alleged severity of Mr. Frazier's subjective symptoms, including by citing evidence revealing that Mr. Frazier was able to successfully use coping strategies when he was actively engaged in treatment. Absent any credible evidence of record to rebut the ALJ's RFC finding, the Court cannot find error. Accordingly, the Court finds Mr. Frazier's argument without merit.

# IV.
## CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274. Taken together, the Court can find no legal basis presented by Mr. Frazier to reverse the ALJ's decision that he was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

Date: 6/28/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel